UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CLYMER FARNER BARLEY, Inc.,**

*Plaintiff*,

v.

**JOHN DOES 1-10,**

*Defendants*.

_____/

CASE NO.:

# COMPLAINT

Plaintiff Clymer Farner Barley, Inc. ("CFB") brings this action against John Does 1-10 ("Defendants") for injunctive relief and damages arising from Defendants' theft of trade secrets and use of CFB's protected computer systems to obtain information without authorization or in excess of authorization.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because this action arises under the laws of the United States: specifically, the federal Defend Trade Secrets Act (18 U.S.C. § 1839, "DTSA") and the Computer Fraud and Abuse Act (18 U.S.C. § 1030(g), "CFAA").

1

2. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## PARTIES

3. CFB is a Florida corporation engaged in the business of civil engineering and land surveying throughout central Florida. CFB's principal place of business is in Wildwood, Sumter County, Florida.

4. Defendants are unknown individuals and/or entities who, acting alone or in concert with others, formulated, directed, or participated in the acts set forth in this Complaint. CFB has performed a diligent investigation to determine the identities of Defendants but has been unable to ascertain their true names prior to the commencement of this action.

## GENERAL ALLEGATIONS

5. CFB's primary client is the Holding Company of The Villages, Inc. and its various affiliates and subsidiaries (collectively, "The Villages").

6. The Villages develops and manages a large residential housing community in Lake, Sumter, and Marion Counties, Florida ("The Villages community"). Among other things, CFB assists The Villages in its efforts to expand The Villages community into new areas.

7. CFB has built its relationship with The Villages over the past thirty years, and CFB's success depends on the ongoing strength of that relationship.

8. Much of the work that CFB performs on behalf of The Villages involves the creation of confidential and proprietary development plans not known to the public or competitors, including forward-looking maps that reveal information concerning upcoming neighborhoods, homesites, infrastructure, and other projects (collectively "development maps").

9. CFB and The Villages derive substantial economic value from the confidentiality of CFB's development maps. Accordingly, CFB goes to significant lengths to prevent the disclosure of these items, which it considers trade secrets.

10. CFB and The Villages have entered into a confidentiality agreement that prohibits CFB from improperly disclosing any confidential or trade secret information related to The Villages community, including development maps.

11. Likewise, CFB requires its employees and agents to agree to maintain the secrecy of CFB and The Villages' confidential and trade secret information, including development maps.

12. CFB stores its development maps on a network-attached storage server that CFB maintains at its primary office (the "NAS").

13. To protect the confidentiality of development maps and other data, the NAS may only be accessed through CFB-owned computers. These computers, in turn, are protected by individual usernames and passwords that CFB issues to its employees and agents. (The NAS and CFB's computers are collectively referred to herein as "CFB's Computer Systems").

14. CFB policy prohibits employees and agents from using CFB's Computer Systems for any non-CFB purpose.

15. On November 11, 2020, a letter to the editor (the "Letter") was published by Villages-News.com ("Villages-News"), a website that reports on events in The Villages community. The Letter included a confidential development map prepared by CFB for The Villages (the "Map"). The Map contained information concerning future development plans in The Villages community. (A copy of the Letter and the Map are attached to this Complaint as Ex. A).

16. At all times prior to publication, the Map was stored on the NAS and was subject to the confidentiality protections described above.

17. On information and belief, Defendants used CFB's Computer Systems to access the Map, and then sent the Letter and the Map to Villages-News with the intent that they be published.

18. CFB's computer use policies prohibited Defendants from using CFB's Computer Systems to access and send the Map to Villages-News for publication.

19. Likewise, the confidentiality agreement between CFB and its employees and agents prohibited Defendants' from disseminating the Map to Villages-News without authorization.

20. Prior to publication, the Map was not available to the public or CFB's competitors.

21. CFB derived substantial economic value from the Map's confidentiality.

22. The unauthorized delivery of the Map to Villages-News, and its subsequent publication, have jeopardized the longstanding business relationship between CFB and The Villages.

23. The Letter was signed by a purported "Bruce Balsinde," the name of an employee of CFB; however, in truth and fact, Balsinde did not prepare or submit the Letter. To the contrary, Balsinde denies any responsibility for the publication of the Letter and the Map, has fully cooperated with CFB's pre-suit investigation of this matter and has executed an affidavit disavowing any involvement with or responsibility for the Letter. (A copy of Balsinde's affidavit is attached to this Complaint as Ex. B).

24. Defendants therefore are using Balsinde's name to carry out their unlawful scheme and to shift attention away from them and their identities.

25. Following publication of the Letter, CFB performed a diligent investigation to determine the identity of Defendants, including:

    a. CFB engaged The Villages Technology Solutions Group, LLC ("TVTSG"), an information technology and communications firm, to perform a forensic analysis of the NAS and CFB's other computer and email systems to determine who sent the Map to Villages-News and how. Despite performing a diligent and comprehensive review, TVTSG was unable to identify Defendants;

    b. Senior CFB management questioned Balsinde at length and on multiple occasions to determine his involvement, if any, in the publication of the Letter and Map. CFB ultimately concluded that Balsinde was not involved, as stated in his affidavit (Ex. B); and

    c. Senior CFB management met with and questioned CFB employees and agents who had the requisite knowledge, opportunity, and ability to access the NAS and locate the Map; however, this process did not reveal Defendants' identities.

26. CFB requires third-party discovery to determine Defendants' identities.

## COUNT I

## VIOLATION OF THE CFAA

27. CFB realleges and incorporates by reference Paragraphs 1 through 26, above.

28. On information and belief, Defendants knowingly and intentionally accessed CFB's Computer Systems for the purpose of disseminating the Map to Villages-News. Such access was unauthorized or in excess of Defendants' authorization.

29. CFB expended substantial resources responding to Defendants' improper access of CFB's Computer Systems. This included retaining TVTSG and performing an internal investigation to determine the source of the breach, what data Defendants had taken, attempting to recover that data, and otherwise working to remedy Defendants' violation. The cost of this response exceeds $5,000. Thus, as a direct and proximate result of Defendants' improper access, CFB has suffered loss of more than $5,000.

30. CFB has also suffered irreparable harm related to Defendants' improper access of CFB's Computer Systems. CFB lacks an adequate remedy at law for these harms, and unless enjoined by this Court, Defendants will continue to cause irreparable injury.

31. CFB's Computer Systems are used in and affect interstate and foreign commerce and are connected to the internet.

WHEREFORE, CFB requests that this Court enter judgment against Defendants: (a) enjoining Defendants, pursuant to 18 U.S.C. § 1030(g), from using or disclosing any information and/or data Defendants obtained through their improper access of CFB's Computer Systems, (b) requiring Defendants to immediately return all such information and/or data to CFB and permanently delete those files from their own computer systems; (c) awarding CFB damages as set forth in 18 U.S.C. § 1030(g), including but not limited to, its costs and reasonable attorneys' fees incurred in this action; and (d) awarding CFB such other and further relief as the Court deems proper and just.

## COUNT II

## VIOLATION OF THE DTSA

32. CFB realleges and incorporates by reference Paragraphs 1 through 26, above.

33. At all relevant times prior to Defendants' public disclosure of the Map:

   a. The Map and its contents were not generally known to the public or competitors;

   b. The public or competitors could not readily discover or ascertain the Map or its contents through proper means;

   c. The confidentiality of the Map and its contents deprived others of the ability to use the Map for financial, commercial, or competitive

purposes. Accordingly, CFB derived independent economic value from the confidentiality of the Map and its contents; and

    d. CFB exerted substantial, reasonable efforts to keep the Map and its contents confidential, including, but not limited to, maintenance of confidentiality agreements and technical access restrictions.

34. The Map is therefore a trade secret under 18 U.S.C. § 1839(3).

35. Defendants have misappropriated the Map within the meaning of 18 U.S.C. § 1839(5) by:

    a. Acquiring the Map either through improper means, under circumstances that obligated Defendants to maintain the confidentiality of the Map, or through a third party who had an obligation to maintain the confidentiality of the Map; and

    b. Disclosing the Map to Villages-News without CFB's express or implied consent.

36. Defendants' misappropriation of the map gave Defendants and others an unfair and unjust advantage in CFB's field of business and deprived CFB of the independent economic value that CFB enjoyed from the confidentiality of the Map.

37. As a result of Defendants' misappropriation, CFB has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

38. Defendants' misappropriation of CFB's trade secrets entitles CFB to injunctive relief and damages, pursuant to 18 U.S.C. § 1836(b)(3).

WHEREFORE, CFB respectfully requests that the Court enter judgment against Defendants and in favor of CFB: (a) enjoining Defendants, pursuant to 18 U.S.C. § 1836(b)(3)(A), from continuing to misappropriate CFB's trade secrets; (b) requiring Defendants to immediately return any and all CFB trade secrets in Defendants' possession and permanently delete any such trade secrets from their own computer systems; (c) awarding CFB damages, pursuant to 18 U.S.C. § 1836(b)(3)(B), in an amount to be determined at trial; and (d) awarding CFB its costs incurred in this action; and (e) such other and further relief as the Court deems proper and just.

Dated: June 7, 2021						Respectfully submitted,

*s/John F. Lauro*
John F. Lauro, Esq. (Lead Trial Counsel)
Florida Bar No. 794074
E-Mail: jlauro@laurolawfirm.com
Gregory M. Singer, Esq.
Florida Bar No.: 0109267
E-Mail: gsinger@laurolawfirm.com
LAURO LAW FIRM
400 N. Tampa St. 15th Floor
Tampa, FL 33602
Telephone: (813) 222-8990

*Counsel for CFB*